NORMENT. The (UNITED STATES v.). See Case No. 15,898.

---

## Case No. 10,302.

In re NORRIS et al.

[2 Hask. 19.] [1]

District Court, D. Maine. Jan., 1876.

BANKRUPTCY OF COPARTNERSHIP—PROVABLE DEBT —INDIVIDUAL NOTES—FIRM INDORSEMENT— USE OF FIRM.

1. The holder of a note, signed by a firm, payable to one of the partners and endorsed by him, given in renewal of the partner's note endorsed by the firm to raise the partner's share of the firm capital as authorized by the articles of copartnership, may prove the same in bankruptcy against the firm assets; but having knowledge of all the facts, he may be required, before taking a dividend from the firm, to apply in payment of the same any security pledged by the partner whose surety the firm in fact was.

2. The holder of a note, signed by a partner and endorsed by the firm, may prove the same in bankruptcy against the assets of the firm without first applying to its payment securities pledged by the partner to secure it.

3. The endorsement of a firm, made by a partner to raise money for his benefit, binds the other partners when the firm books disclose the entire transaction and they make no objection to it.

4. The holder of a note, signed by a firm and endorsed by a partner, the proceeds of which were credited upon the firm books and received by the firm, may prove the same in bankruptcy against the firm assets, even though the assignees show that the partner, with the assent of his copartners and without fraud, drew for his own use firm assets so received.

In bankruptcy. Proof of debt. Appeal by the assignees from the allowance by Mr. Register Fessenden of a proof of debt against firm assets.

Charles P. Mattocks and Edward W. Fox, for appellants.

William L. Putnam. for appellee.

FOX, District Judge. The assignees in bankruptcy of this firm have appealed from the allowance by the register of the proof of debt by John E. Donnell for $28,448.86 on sixteen notes, given by the firm to John T. Hull and endorsed by him and Robert I. Hull, the notes having been discounted on the endorsement of said Donnell and subsequently taken up by him. In his proof he states that he has no security upon any property belonging to the copartnership, but holds as collateral security forty second mortgage bonds of the Portland Real Estate and Building Co. for $1,000 each, and two bonds of the Portland Tenement House Co., belonging to John T. Hull individually, and that copies of the agreement under which he holds said bonds are annexed and made part of his proof. He also holds nine second mortgage bonds of said Real Estate and Building Co. for $1,000 each, as collateral security for the note of $5,000, one of the sixteen for which there is no written agreement.

The copartnership of Norris, Hull & Co. was entered into on the first of Sept., 1871, by W. G. Norris, John T. Hull and Robert I. Hull, for the manufacture of shoes in Portland. Norris was to contribute his time and skill, but no other capital. The Hulls were each to contribute to the capital, five thousand dollars in cash or by use of the firm name for their individual benefit, they paying the discount upon such paper. The articles of copartnership are of an uncertain and somewhat ambiguous nature; but it is conceded by both sides that each of the Hulls was to furnish capital to the extent of $5,000 with the privilege of procuring this sum upon the paper of the firm which was to remain, as between the parties, the individual liability of the Hulls. Such notes were to be assumed and discharged by them, the firm to be exonerated from any liability, by such use of its name for the benefit and convenience of the Hulls. The firm continued in business until Feb. 6, 1874, when it suspended payment, being deeply insolvent.

The principal objection made to the allowance of this claim is, that the notes in proof were renewals of prior notes which originally were the individual liabilities of the Hulls and from which the firm of Norris, Hull & Co. derived no advantage; that Donnell was well aware of these facts, and in Aug. 1873, induced John T. Hull, without the knowledge of Norris, to change the form of the notes, substituting as promisors, the firm, instead of John T. and Robert I. Hull, in fraud of the creditors of the copartnership.

It appears that John T. Hull was the finan-

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

cier of this firm from the commencement, and was interested at the same time with his brother Robert in certain real estate transactions in this city, and was also erecting a block of houses on Carrol street. He was in the habit of receiving large sums on account of these real estate transactions, all of which are credited on the books of the firm, and went into their cash, and he also made payment therefor as required. Much of the difficulty in this investigation has arisen from the various accounts kept by him in the company books with these concerns, and by his appropriation, of the amounts in his hands, from time to time to the one purpose or the other, according as the condition of the particular account might render necessary.

In order to raise their proportion of the capital, the Hulls made two notes for $5,000 each, payable to and endorsed by the firm, which were subsequently endorsed by Donnell as security for which liability he received from John T. Hull, Dec. 6, 1871, 200 shares of stock in the Portland Real Estate and Building Co. In August, 1873, a new arrangement was made by the Hulls and Donnell by which he agreed to endorse for them and the firm not exceeding $25,000, for which he held as collateral forty second mortgage bonds of $1,000 each of the Portland Real Estate and Building Co., and two first mortgage bonds of $500 each of the Portland Tenement House Co. The 200 shares of stock held by Donnell were, before that, exchanged for twenty second mortgage bonds of the Portland Real Estate and Building Co. By the agreement executed August 5th, it was stipulated that "this collateral security should be held for all past, present and future endorsements, and other liabilities for said Hull, or Norris, Hull & Co., and for all past, present and future indebtedness of them or either of them to said Donnell."

The claims presented by Donnell may be divided into three classes:

I. This class contains only one note of $5,000, dated Nov. 29, 1873, payable in four months, as has been already stated. The note now presented is the note of the firm, payable to John T. Hull, and endorsed by him and his brother, R. I. Hull. It is not denied that this note was a renewal, and it appears to have been originally one of the notes made by the Hulls to raise their share of the capital. As first drawn, it was the promise of the Hulls payable to Norris, Hull & Co., and endorsed by them and by Donnell, and the money was raised thereon. This note, as between the firm and the Hulls, was their individual debt, which they were, by the articles of co-partnership, bound to pay and discharge, and to save harmless the firm from all loss or liability on account thereof. It is shown that Donnell was informed of the substance of the articles of copartnership, and of the purpose for which this note was issued, and of the various renewals and mod-

ifications by which the firm eventually became promisors for this sum, instead of endorsers.

The change of the relation of the parties to this paper can not affect their rights in the present controversy, as Donnell, from the commencement, has been fully aware of the consideration and purpose for which this paper was made, and of the real relation of the parties thereto. From its very commencement, the firm was liable, but in reality, as between the firm and the Hulls, it has always remained the individual liability of the Hulls, and nothing has been done which can affect or in any way change this relation. The assignees claim that as against Donnell, it is still to be deemed the individual liability of the Hulls, and that he can have no redress whatever against the firm for its payment.

This question must depend entirely on the legal effect of the articles of copartnership, as Donnell admits he had cognizance of them. From them, it appears that while, as between the firm and the Hulls, they were to assume and discharge the notes on which the capital was procured, yet the articles provided that the firm was also to become responsible upon these notes to the holders, and, although in the position of accommodation endorsers, they were at all times accountable as such endorsers to whoever might become the legal holders of such paper.

If the present claim was founded on the original note of the Hulls as makers and the firm as its endorsers, the firm having by the original contract stipulated that such should be their liability, that the Hulls should have the right to use the firm name upon which to procure their capital, Donnell would be fully authorized, if he had subsequently taken up the notes, to enforce his claim against the firm as endorsers; and in my view, the facts here disclose no valid defence, which could be established by the firm against such liability.

This note must be considered, for the purpose of the present investigation, as if it were the original note of the Hulls endorsed by Donnell, and for which Donnell held as collateral security, as he states in his proof of debt, "$9,000 of second mortgage bonds of the Portland Real Estate and Building Co." Hull is to be deemed the party primarily liable to pay and discharge this note, and the firm are his sureties only; and it is but equitable that the property of the principal should be applied to relieve the estate of the surety from its liability as far as practicable. I am of opinion, therefore, that although Donnell has the right to prove the full amount of this note against the firm estate, yet the court may withhold the payment of any dividend therefrom until he has exhausted the security given to him therefor by the principals; that while he is entitled to receive the full amount of the note from the parties thereto, he should be ordered and

required to convert the security into money, and ascertain what may be realized therefrom. and apply the same to the payment of the note; and for any balance remaining unpaid, he may receive the dividends from the estate of the firm, until he shall have been paid the full amount of his claim.

II. This class contains three notes given by the firm to John T. Hull; one for $3,000 dated Oct. 4, 1873, which was a renewal of the Hulls' promise on a like amount dated August 1, 1873. A second for a like sum and of like terms. dated Oct. 10, 1873, given in renewal of Hull's note, dated July 7, 1873, and the last, for $2,800, dated Nov. 19th, and given in part renewal of Hull's note dated July 10, 1873. All of these notes, having in their inception been the promise of the Hulls, and the firm having appeared thereon merely as endorsers, it becomes necessary to examine and determine what was the exact relation of the firm to these notes, and the purposes for which they were given. The cash book of the firm shows that the firm in fact received the full amount which was realized from these notes; it is all there credited by the firm; and it further appears that it was not uncommon for John T. Hull to raise money for the firm on paper of a similar kind, and that the books of the firm disclosed the true state of these transactions. These notes were originally made for the sole use and benefit of the firm, and although the Hulls appeared as the parties primarily liable as the promisors, and the firm only secondarily accountable as endorsers, yet in truth, their relations inter sese were exactly the reverse, and the firm, having derived the advantage from this paper, was bound to bear the burden of its payment and indemnify the Hulls therefrom. It is claimed by the assignees that although such was the apparent condition of things, yet in fact the money realized from these notes was in a short time withdrawn by John T. Hull from the firm, and applied to the payment of claims against him on account of real estate; but the books do not disclose that such was the state of accounts at that time.

On the first day of August, which was the date of the last of the original notes, there stood on the firm books to the credit of the Hulls almost $10,000; and nearly the whole of this amount so continued until the first of September following; but soon after that, considerable drafts were made upon this credit, which were continued until the whole was withdrawn and the Hulls became indebted to the firm. The books from day to day disclosed the conduct of John T. Hull. There were no false entries or concealments of any of his proceedings. That he was procuring money on the credit of the firm was quite apparent, and it was equally apparent what disposition he made of it. Norris, therefore, as one of the firm, was chargeable with notice of what the firm books disclosed, and he not having made objection thereto, must be deemed to have assented to the conduct of the business by his copartner.

It is objected, that by the change of the relation of the parties to these notes after Aug. 3d, a fraud on the creditors of the firm was accomplished; that the object was to so arrange matters "that in case of the bankruptcy of the makers of these notes, dividends from the copartnership could be drawn for the full face of the notes, without being compelled to deduct the value of the securities received from the Hulls; and that in fact, it was an attempt on the part of the Hulls to pay their individual debts from the assets of the copartnership." The ground work of this objection fails, as the notes were originally for the firm's benefit, and the proceeds were used in their business; but if it were otherwise, the firm was in the beginning accountable as endorser, and the holders could have proved their whole debt against the firm estate, although the individual members had given security upon their private estate to the holders of this paper. Emery v. Canal Nat. Bank [Case No. 4,446]; In re Cram [Id. 3,343]. I am of opinion that these notes were justly and legally provable against the copartnership estate.

III. This class is composed of twelve notes amounting to $14,700, all having their origin after Aug. 5, 1871, and all the promise of the firm endorsed by the Hulls individually, and subsequently by Donnell, the proceeds of all which were credited on the copartnership books. Upon this state of facts the burden is certainly upon the assignees to satisfy the court why these notes are not valid claims against the firm estate. It is admitted that prima facie the firm was accountable; but it is claimed, that although the proceeds of these notes at the moment went to the benefit of the firm, yet, that a large portion of the amount was subsequently withdrawn by J. T. Hull to discharge claims against the Hulls. on account of their real estate, the balance due from the Hulls on this account at their failure, being about $4,000.

It is quite apparent that the firm derived very great advantage in the outset from the course adopted by John T. Hull, in his management of this business. From Oct. 11, 1871, to Sept., 1873, there was generally on the books of the firm a credit to the Hulls of about $10,000, and sometimes largely in excess of that amount. John T. Hull, "on account of the Carrol street houses," a block which he appears to have been constructing on his individual account. stands on the books of the firm as its creditor during the first half of the year 1873, and as late as the 18th of August of that year, he was a debtor to the extent of only $5.800 on this account; but this balance increased, until at the date of their failure, he owed the firm, on account of Carrol street houses, $6,074.52, making in all about $10.000 drawn from the firm to pay debts contracted by the

Hulls in their real estate transactions. John T. Hull in these matters appears to have been consistent, making the firm, in fact, the bankers of the Hulls in their business arising out of their real estate; when in funds, the firm received the money on this account, and derived the benefit from it, and when debts accrued, he looked to the firm to meet them, and they were so paid. Although it may be argued that he should not have paid these debts from the funds of the copartnership, yet there is no evidence that it was done by him with any fraudulent purpose. I am satisfied both of his partners were aware of his so doing, and did not dissent thereto. He well knew that through his means the firm had received large sums by loans, for which the only security was the bonds secured upon this real estate, and in which the copartnership had no interest.

Donnell was the nominal president of the real estate and building company; but no evidence is presented, which satisfies me that he was aware that John T. Hull was appropriating any of the firm assets to the payment of bills contracted by him in erecting the Carrol street houses; and it was not claimed at the argument that the expense in the erection of this block appeared upon the books of the company of which Donnell was president. Of the $4,000 due the firm from J. T. & R. I. Hull, probably some portion would appear on their books, as having been paid by the Hulls for the benefit of that corporation; but it is not shown to me that those books disclosed that they received it from Norris, Hull & Company; and it is proved that the Hulls obtained, from other sources, funds which were applied by them to the use of the real estate and building company. I can not, therefore, from any evidence before me, find that Donnell was aware that the Hulls were withdrawing these sums from the copartnership, to be applied in payment of bills contracted by them on account of their real estate; and if John T. Hull misappropriated the funds of the partnership, Donnell cannot be held accountable therefor. It must be borne in mind that every dollar of these notes was primarily for the copartnership benefit, and appears on their books; and even if it were established that Donnell was aware that Hull did apply to his private account some portion of the company funds, yet, I am satisfied that each of his copartners assented to his so doing; and under such circumstances, the firm could not sustain a valid defence to a suit by Donnell upon these notes, taken up by him as endorser, the whole amount of which had once gone to the firm's benefit, as their books disclosed. If the firm or the assignees can have any redress as against Donnell, it can not be presented in this manner as a defense to these notes.

The result of the whole is, that Donnell now holds $28,000 of the notes of this firm, for $5,000 of which sum the Hulls are accountable to the firm, and for the payment of which their individual estate is pledged as security, and the proceeds of which must first be applied to the payment of this sum before the firm estate can be called upon for contribution. There will still remain $23,000, which has gone to increase the copartnership assets, and for which the individual property of the Hulls is pledged to Donnell; but the Hulls have withdrawn for their private benefit about $10 000, for which amount they are indebted to the partnership. In this sum is not included the sums taken by them from the firm for their support, which appear to be less than was drawn out by Norris for the same purpose. Throughout the entire existence of this copartnership, its credit has been almost wholly dependent on the endorsements of its paper by Donnell, which have been obtained upon the security of the private property of the Hulls, all of which is lost to them, and the larger portion of which has gone to the firm credit. Appeal dismissed. Proof allowed.

[This case was again heard upon the proof of debt of the Portland Savings Bank. Case No. 10,303.]